Good morning. May it please the court. Michael Williams of the UCLA Law School Appellate Clinic for Appellant Paul Heavey. I'm here with my co-counsel Catalina Vergara of O'Melveny & Myers. We'd like to reserve two minutes for rebuttal. And I'd like to talk briefly about the court access issue, and I'd like to turn it over to my co-counsel to address the second issue in our case, the Allen claim. With respect to the court access issue, the pro se complaint in this case alleged that defendants denied Mr. Heavey access to the prison law library for nearly four straight months while he was on direct pro se appeal from the criminal conviction that put him in that prison. He alleged that he was completely unable to file an appellate brief and it identified the exact dates when he was on lockdown and unable to access the law library. In motions before the district court on a motion to dismiss, he went on to identify several of the arguments he would have raised in his appeal, including prosecutorial misconduct, ineffective assistance of counsel, and so on. Nevertheless, the district court found that Mr. Heavey had not adequately pled his court access claim and dismissed it at the pleading stage. The district court applied the wrong standard in this case, Your Honors. Mr. Heavey is not required to plead a meritorious claim, as the district court found. Instead, he need only plead an arguable one. Moreover, especially in a pro se case, he need not plead in detail the underlying facts that gave rise to the claim that he lost. Let me ask you something that's troubling me about this case. As I understand, his contention is he was unable to litigate his conviction because he didn't get access to the law library. But before you ever reach the question of the validity of his conviction, he's got to do something about his guilty plea. He pled guilty, I gather it was pursuant to a plea agreement. He was represented by counsel there. My question is, what grounds does he have to challenge the guilty plea? As far as I can tell, he's not alleged that the guilty plea was the result of any misstatement by his counsel or that he didn't understand what he was doing. I don't know whether they have anything under California law comparable to the federal practice of allocution. That is, before the judge will accept the guilty plea, he said to him, now tell me what you did, what crime did you commit, and so on. That's what I find the problem in the case is, apart from broad theoretical questions as to his right to have access to the library, he's pleaded guilty. And as long as that plea stands, he cannot object to his conviction. Your Honor, the underlying record in the criminal case is not part of the record on this case. And unfortunately, we don't have the details on that plea procedure. What we can say, construing what we do have broadly, is that Mr. Heavey disputed key eyewitness testimony. At a motion, and I'm specifically talking about what Mr. Heavey says at Excerpt of Record 33 and 34, he disputed key eyewitness testimony. At a hearing to suppress that testimony, he believed there was specific evidence that contradicted that testimony. He could not get his counsel, for whatever reason, to try to introduce that evidence. And he alleges, specifically in the complaint, that the police and the prosecution failed to turn over that evidence to the defense. Now, once they lost that motion, his counsel adamantly advised him to plead guilty, because the possibility that he could be sentenced to life under California's three strikes rule. Mr. Heavey reluctantly accepted that advice, believing that he could appeal, appeal after his guilty plea. His appellate counsel, as Defendants have pointed out, failed to identify that issue, failed to raise any issues at all on appeal. And he wanted to bring that issue to the Court's attention pro se in a supplemental brief to the appellate court. That was the brief that he lost. He was on lockdown, completely unable. What issues could he have raised on appeal other than some challenge to his plea? That is, you agree, wouldn't you, that as long as his plea stands, he can't challenge the conviction? He didn't, I gather, in this case, say that I'll plead guilty, but I want to preserve my right on appeal to contend that there shouldn't have been – there should have been a suppression of certain evidences. There's nothing like that in this case. It's a plea agreement, and he pleaded guilty, and he was sentenced. Well, that's – I mean, that's what Mr. Heavey would have liked to address in the appellate brief that he was unable to file. He has said, and I'm quoting here, on Excerpt of Record 33, Identification Testimony by Officer Murray on March 24, 1998 was false. Defense counsel did not challenge this or preserve it for appeal, and the DA knew it was false. But he – after he had pleaded guilty, it seemed to me, he had two choices. He could either have sought to withdraw the plea, or if he didn't do that, he could have, on appeal, challenged the plea as the product of some improper procedure or something that was done improperly in the trial court. And he – as far as I can see, he hasn't done either of those things, and I don't know why his guilty plea in these circumstances shouldn't stand. Well, Your Honor, overturning the guilty plea is not a possible – it's not a possible remedy in this case. Mr. Heavey's been denied the chance to get into court, and he's suing under Section 1983 based on the violation of his constitutional rights. The guilty plea will stand regardless. The point here is, Your Honor, that he was denied the opportunity to contest that, and he's identified some of the basis on which he would have contested that. And he's also identified exactly how the defendants denied him that opportunity. We think that's enough to get into court. The district court dismissed this case on the pleadings. That was an error, Your Honor. Let me ask another question. In the objections to the magistrate's recommendation, your client asserted that the record on appeal is incomplete and that the government possessed certain documents that contradict the police reports. How do you respond to the government's assertion that these are mere conclusions or conjectures? I read them as allegations of fact, Your Honor. I'm not sure – I'm not sure how to characterize them as one or the other. He's identified at several places in the record exactly what was troubling him about this evidentiary motion and the hearing on that motion. He's identified that specific testimony that he believes is false and areas of the record where he believes are incomplete and misleading. It's – we think that's enough to get into court, Your Honor. All right. Let me ask another question. Why shouldn't we defer to the prisoner's decision to allow prisoners to either exercise or go to the library or do both? Well, Your Honor, that's a perfect place for me to hand it off to my co-counsel, if that pleases the Court. All right. Good morning, Your Honors, and thank you for the transition mic. Catalina Vergara for Appellant Eric Hebe, and I will be addressing the second issue in this appeal, and that is Mr. Hebe's Allen claim. So to your question, Judge Nelson – Can you speak up a little? Yes, Your Honor. So following the lockdown periods, the three lockdown periods on which Mr. Hebe was placed, he tried to – he was intent on pursuing his legal remedies. He had been denied his ability to pursue his direct appeal, as my colleague mentioned. And so in the periods immediately following the lockdowns, he was making efforts to get into the library to research his – any avenues for resurrecting that appeal, which ultimately was fruitless, and then ultimately researching and filing this claim. Now, as to whether or how this Court should defer to the prison's regulations, we're not asking this Court to micromanage prison policy on whether and when prisoners can go to the library or can exercise. But the truth is, under Allen, which remains good law, a prison cannot construct a policy or cannot set up a system whereby a prisoner is forced to choose between two constitutionally protected rights, and that's exactly what happened in this situation. Mr. Hebe had, in those post-lockdown periods, at most eight hours a week in which to exercise or access the library, and that simply was not enough. He was pursuing his legal remedies, as I've mentioned, and so he was forced to choose going to the library over any exercise time, and that was for a period of nine months that he was deprived of exercise. To what extent is this issue, your issue, dependent on Judge Friedman's question, if at all? To what extent does he have to show that what he was pursuing had some merit? I don't know quite what it is. He can't be frivolous, let's say. But if he had no basis for an appeal because of the guilt he played, and I'm not saying that's correct, but if that's correct, is there any basis for suing the State, and does that matter that he had no basis for the research he was doing? Well, respectfully, Your Honor, in my view... It doesn't have to be respectfully. You can just answer it. It is respectfully. Whatever you think. They're two completely separate issues. So Judge Friedman's question went to whether, you know, the guilty plea stood or not, and these are, let me point out, temporarily different claims. The claims that my colleague Mike addressed have to do with the periods when Mr. Hebu was on lockdown. What we're talking about now is the periods following lockdown when he had to choose. I understand that. But I'm saying what he wanted to research in the library is related to this first case. It is in part, but let me say, Your Honor, what he wanted to research here was his, eventually was his ability, was this 1983 action. And this 1983 action was deemed meritorious enough by the district court judge that it made it to a jury. So we're talking here about a claim that even if one does import the Lewis standing requirement into the Allen claim would satisfy that requirement. This is an action that made it to a jury. Let's see here. So because he was intent on researching his ability to get into the library, he was deprived, effectively deprived of his ability to exercise for a period of nine months. And this was during a larger period of 16 months within which he spent the other seven months on lockdown. So for a period, one can reasonably read the facts here in Mr. Heavey's favor as effectively being a deprivation of his exercise rights for a period of 16 months, which is unquestionably enough to get past the pleading stage. If Your Honors have no further questions, I see that the red light is on, so I will. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court. Excuse me. My name is David Carrasco with the Office of the Attorney General for the State of California. This Court should affirm the dismissal of both Mr. Heavey's access to court claim and his outdoor exercise claim. These claims arose out of different circumstances. The access to court claim arose when Mr. Heavey was on lockdown, did not have physical access to the law library, and could not exercise on the yard. And the outdoor exercise claim arose when he was not on lockdown and had access to both the yard for outdoor exercise and the law library. Didn't he have to make a choice between the two? I beg your pardon, sir? Did he not have to make a choice between the two? Regarding the outdoor exercise claim, he made a choice. I don't know that he had to make a choice. He made a choice to go to the law library. He has not made any allegation that... He was given eight hours for the two combined. Right, Your Honor. And so he made a choice to go to the law library rather than the exercise. Right. There was a conflict. There was a conflict there. But Mr. Heavey has no freestanding right to physically access the law library. There is a right to access court, and to access court, a law library is one of the facilities that must be afforded prisoners. But Mr. Heavey has not alleged that without foregoing outdoor exercise, he would have lost the opportunity to file a non-frivolous claim. He has not alleged any such thing. In other words... Hasn't he alleged that in order to go to the law library to work on his claim, that he had to give up the right to exercise? He has not alleged that, Your Honor. He just alleged that he had to make a choice. I don't understand the difference. Well, I mean, he may have... From all that we can gather from Mr. Heavey's complaint, he wanted to go to the law library to browse the shelves, to see what grievances he might find to make a lawsuit about. This is precisely what Lewis v. Casey says that a prisoner has no constitutional right to. In other words... I thought he went to research this, making, filing this claim. He doesn't allege that in his complaint. He simply says that he was forced to make a choice. And it's the same kind of claim that was made in the Allen v.... Your argument is that he didn't specify that what he was researching was this complaint that he filed. No, he doesn't allege that. I said that's your argument, that he didn't specify that it was this complaint. Well, he doesn't allege that he specified... He doesn't specify that he was making any complaint, this one or any other. How can we expect that of a pro se prisoner? In other words, to expect him to state an exact legal claim? I mean, we have no dispute with the authorities presented by appellant's counsel regarding the liberal construction of pro se pleadings. But the liberal construction of pro se pleadings does not allow a court to assume facts that are not alleged. And this is also a holding by the United States Supreme Court regarding pro se pleadings. You say you're telling us what he didn't allege. Now, what did he allege? Your Honor, he's... I mean, is it your theory that, well, maybe he just wanted to go to the law library because he'd like to do some research generally on constitutional law? From all that we can gather from the complaint, that's precisely correct, Your Honor. He may have been doing something other than that. But from what we can gather from the complaint... Did you ever tell him that he wanted to research questions relating to the appealability of his conviction? He doesn't allege that, Your Honor. He never said that. Not regarding being forced to choose between outdoor exercise and the law library. But didn't he allege that the prosecutor withheld exculpatory information and that the identification testimony was contradicted? Why wouldn't that be enough? Well, that goes to his access... He makes those allegations with respect to his inability to make a non-frivolous appeal. He alleges... That was during the lockdown period when he didn't have a choice to go without outdoor exercise or physically access the library. And the problem with that contention is that in his complaint... If I may just... Before getting to that question, in his complaint, he doesn't allege that either. In his complaint, he simply... What we have in his complaint, actually, shows that he didn't have a non-frivolous appeal that he could make. What he alleges in the complaint is that he was... He pleaded guilty to a felony charge or charges. His attorney could not find any issues on which to make an appeal. And that according to the Wendy procedure, the... I think it was the Third District Court of Appeal could not find any issues on which an appeal could be made. Those are the actual factual allegations that he makes in the complaint. Now, based on those facts, one would have to say that there is no non-frivolous appeal that he could make. He makes the contentions about the contradictory evidence or evidence that was withheld in objections to the recommendation by the magistrate judge in the district court recommending a dismissal on a Rule 12b-6 motion in this case. Now, the problem with those contentions, assuming that they can be brought in and shown to... Let's say, assume that he could make those in an amended complaint to save this action from dismissal. The problem with those contentions is that he had pleaded guilty, as Judge Friedman said. He has to show that there was some... that he was able to withdraw that guilty plea or had withdrawn the guilty plea. And he hasn't done that either. In fact, a statute that was not cited by either party in their briefing and goes to the heart of that question about whether these contentions could be raised after a defendant makes a guilty plea is California Penal Code section 1237.5. Now, this section requires that a defendant who wishes to make an appeal of a conviction after pleading guilty file a statement with the court under oath stating the grounds which go to the legality of the proceedings and receive from the court a certificate of probable cause before making the appeal. Well, you know, as Judge Nelson said, you don't expect a prisoner to know the answers to all these things. That may be the answer he finds out from going to the library, that he doesn't have a basis for an appeal. But unless he goes to the library and does that legal research, he won't know as much as you do. Your Honor... I mean, now maybe he does after going to the library. Well, Your Honor, if I may continue to answer that question. This statement of probable cause, and by the way, the grounds for making such an appeal after a guilty plea are limited to the legality of the proceedings, like jurisdiction. It does not – evidentiary issues are waived with a guilty plea. They cannot be raised even with a statement. That comes to my question. Is he supposed to know that without going to the library? Probably not, Your Honor. However, that statement that's required by Penal Code Section 1237.5 is required to be made at the time of the notice of appeal. Now, if we look at the record in this case, the notice of appeal was made on July 2nd, 1998. I don't see how any of this is responsive to my question. You know, the question of when you have a waiver, when a waiver is valid, when it's not, all these things are surprising sometimes when you read cases. But a prisoner's got to find out what his rights are. Can he – can he file a bona fide appeal? Is there – does he have that right? Is it – what are the chances it'll succeed? No, I agree with you, Your Honor, that a pro se prisoner probably could not – he could not know this without looking at the library. All right. So in order to go to the library, he had to give up the right to exercise. No, Your Honor, if I may, just allow me one moment more. The point I was trying to make here was that at the time he filed the notice of appeal, July 2nd, 1998, he was represented by counsel. July 2nd, 1998 was before he was even brought into the prison at California State Prison Sacramento. Right. I mean, he was – he wasn't brought – by the time he was brought into the prison at CSP SAC, which was August 98, the lockdown didn't start until 11-9-98. This was far after the possibility of even making such a statement. Well, his lawyer filed a Wendy brief, right? Yes. So he wanted to file his own brief. What I'm saying is that he had already lost – his attorney had already forfeited the chance. And by the way, all those contentions that were raised in the objections do not go to the legality of the proceedings. I know, but he doesn't know that they have to go to the legality of the proceedings. He doesn't like his attorney's brief. He thinks he has a right to file his own brief, which he does. Whether they have to go to the legality of the proceedings is something he doesn't know and may find out if he goes to the law library or may not. After all this time, when he had had the chance, he did go to the law library. We know he says he forfeited outdoor exercise to go to the law library. He didn't find any grounds that go to the legality of the proceedings then, and he still hasn't. He's never stated grounds going to the legality of the proceedings in which he entered the guilty plea, even to this very day. He was challenged when we made the – when appellees made their answering brief, we challenged them, what is this ground that you want to make in the appeal? We still don't know. We still don't know. When you said – when you referred to the legality of the – he hasn't raised anything respecting the legality of the proceedings, by that you mean the legality of the proceedings in which he pleaded guilty. Correct, Your Honor. That's exactly right. Jurisdiction? He says – he's set forth nothing so far that would justify either withdrawing that plea or overturning it on appeal. That's correct, Your Honor. In fact, there were two access to court's claim made by the appellants in this case. One was the inability to withdraw the guilty plea, and the other one was filing a non-frivolous appeal. We pointed out in the answering brief that the ability to withdraw the guilty plea was not lost. There was no time limit on that. In fact, if he had good cause showing, he could bring that petition right now. And that's what he would have to do in order to raise any of the issues that he – say he wants to raise with this appeal. Well, maybe he didn't spend enough time in the law library. Well, Your Honor, this – he's had plenty of time in the law library. And he's – this is a – well, in Lewis v. Casey, the court cautions us that we should not require prison authorities to turn prisoners into engines of litigation. They have to have a claim. Except you're giving them the right to go to the law library. You're just saying give up your exercise for it. Nobody stopped them from going to the law library. Nobody said you don't have any reason to go to the law library. They said you can go to the law library if you give up your exercise. Well, it's not – it's not for the indefinite future. I mean, the ability to make a non-frivolous claim should not take very many weeks to do. So then – but nobody said when he went to the law library, you're taking too much time in the law library. We won't let you go there. It shouldn't take that long. That would have been a different case. Instead, they said, yes, you can go to the law library for all these weeks. All you have to do is give up your right to exercise. Your Honor, many courts have held that brief deprivations about your exercise do not give rise to a constitutional claim. Okay. Now we're on to the question. Okay. All right. Brief deprivations do not give rise to a constitutional claim. And how long a deprivation was this? He doesn't say. I thought it was 13 months. Well, there was – there was 13 months of – in total of the lockdown. But that's not what we're talking about when we talk about the outdoor exercise claim. That's when he did have – he was not on lockdown. And he did otherwise have access to outdoor exercise. But he chose to forego that to, for all we know, browse the shelves of the law library. We don't know what he was doing there. He doesn't indicate that he filed any non-frivolous claim as a result of those visits. So we don't know. But getting back to the point here, if he – if exercise was so important to his health, he should take the exercise, do the research at some other time, this Court and other courts throughout this country. At some other time. You don't have indefinite times to file appeals, to file lawsuits or statutes of limitations. He doesn't know what they are. I mean, you go and you find out. And if you say, well, I'll do it another time, that can well – you'll be here saying, well, it didn't meet the statute. Prisoners frequently ask for extensions of time, and they're routinely granted them successively and repeatedly. Because the courts know the constraints in which they operate. The courts understand that they have constraints on their access to the law library. I've never seen the court deny a prisoner an extension. I've never seen the court deny a prisoner an extension of time. I've never seen the court deny a prisoner an extension of time, even after repeated requests to file any claim or appeal or motion. So if he needed more time, he could ask for it. By the way, there's nothing in the record that says he asked for extensions of time listed on it. Have you ever seen an AEDPA case? I beg your pardon, Your Honor? Have you ever seen an AEDPA case? AEDPA? No, I don't. A habeas case? Oh, habeas, yes. Where we have all these wonderful time limits? Well, yes, I have. I'd like to see those time limits waived. And have you come here and say, waive the AEDPA time limits because he's a prisoner? There are some time limits that are jurisdictional that cannot be waived or extended, like a notice of appeal. But here we had a notice of appeal, and there was never a request for an extension. In fact, when the court made its ruling, its final ruling – I'm afraid we're going way over time. I think we understand the issues by now. Thank you, Your Honor. Thank you. Okay. One of you for no more than two minutes. Yes, briefly. To Mr. Carrasco's one of his later points, characterizing the deprivation of Mr. Hebe's exercise as a brief deprivation. That is false. If one looks at the record, we're talking here about a 16-month period that began in November 1998, ended with the filing of this 1983 lawsuit in February of 2000. During that 16-month period, Mr. Hebe was on lockdown for seven months with no exercise and had nine months in which he was forced to choose going to the library over exercising. So one can reasonably construe the papers in this case to mean that he was deprived of exercise for 16 months. And this Court's precedent suggests that even a deprivation of six weeks is sufficiently serious to make out an Eighth Amendment claim. So one cannot characterize this as a brief deprivation here. As to the Allen claim, Your Honor, raise the right question. What facts should he have alleged? It's true that Mr. Hebe in his complaint – I think that's what Judge Nelson would say. It's true that Mr. Hebe in his complaint alleged that he was forced to choose between one and the other. He didn't specifically spell out that had he not been given access to the library, he would have been deprived of his ability to bring this 1983 lawsuit. But that's obvious from the face of the complaint and from the timing in this case. And reading the papers liberally, as one must do with a pro se plaintiff, it's clear that that's what he would have given up. Moreover, there is a reference in the record, Mr. Hebe in his objections to the magistrate's findings, said at record page 25 that he was, I'm quoting here, not just going to the law library to leisurely read law books. He was going to pursue his legal remedies. Briefly then, on the lockdown claim, on the access to court claim, Mr. Carrasco suggested that Mr. Hebe has to prove now, he has to show that he's able to withdraw his guilty plea. Those are questions for another day. He doesn't have to prove that now. He doesn't have to show that. And the Pratt case we cited in our papers out of the Seventh Circuit is instructive on that point. What he has to do is to allege a non-frivolous claim, which he did. And the district court committed legal error by dismissing that claim as well as Mr. Hebe's Allen claim on the papers. Thank you, counsel. Thank you, Your Honor. Thank you all very much. The case to its argument will be submitted.
judges: Friedman, Nelson D. W., Reinhardt